NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: MARK ALFRED GREENSTEIN,**
*Appellant*

---

2019-1521

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/203,768.

---

Decided: September 6, 2019

---

MARK ALFRED GREENSTEIN, Bethesda, MD, pro se.

JOSEPH MATAL, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, AMY J. NELSON.

---

Before PROST, *Chief Judge,* NEWMAN and MOORE, *Circuit Judges.*

PER CURIAM.

Mark A. Greenstein appeals from the Patent Trial and Appeal Board's decision affirming the examiner's rejection of all pending claims of U.S. Patent Application No. 14/203,768 (the "'768 application"). *See Ex Parte Mark*

*Greenstein*, No. 2017-4087, 2018 WL 4360561 (P.T.A.B. Aug. 28, 2018) ("*Decision*"). Because we hold the claims are directed to patent-ineligible subject matter, we *affirm*.

BACKGROUND

The '768 application relates to automated systems for personal financial planning. It describes the automatic adjustment of an individual's savings, and the investment thereof, to increase the probability of achieving a projected income in retirement. The claimed systems utilize computers to receive, store and adjust savings and investment data. *See, e.g.*, '768 application at Fig. 4; *see also id.* at 13 ("A Computer attached to a Storage Device using Software automatically adjusts different elements such as the Amount Saved."). Claim 1 is representative:[1]

> 1. One or more computers with associated software programmed to:
>
> receive, at a processor and store using one or more storage devices employing memory, data corresponding to invested amounts and using one or more computers with associated software including algorithms and employing such software and algorithms to:
>
>> utilize a projected amount of income at a future date for at least one person;
>>
>> automatically adjust the amount such person saves incorporating the projected income amount so that achieving such projected income amount is more likely; and

---

[1]    Mr. Greenstein does not separately argue the patent-eligibility of claims 2–12. Therefore, we do not separately address the dependent claims.

> invest the saved amounts saved in one or more investment vehicles.

'768 application at cl. 1.

The examiner rejected all pending claims of the '768 application under 35 U.S.C. § 101 as directed to patent-ineligible subject matter; claims 1, 2, 4, 7, 9 and 10 under 35 U.S.C. § 102 as anticipated; and claims 3, 5, 6, 8, 11 and 12 under 35 U.S.C. § 103 as obvious. S.A. 192–207. On appeal, the Board affirmed the examiner's rejections. *Decision*, 2018 WL 4360561, at *6–7. Under § 101, the Board held the claims (1) are directed to the abstract idea of "[a]djusting the amount a person saves and choosing investments for the saved amounts, with the goal of saving enough for retirement," and (2) provide no inventive concept beyond that abstract idea. *Id.* at *4–5.

Mr. Greenstein appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A). Because we conclude that all pending claims are directed to patent-ineligible subject matter, we do not reach the merits of Mr. Greenstein's arguments as to the Board's rulings under §§ 102 and 103.

## DISCUSSION

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1380 (Fed. Cir. 2019). Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

We follow the Supreme Court's two-step framework to "distinguish[] patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). First, we determine whether the claims are directed to a "patent-ineligible concept," such as an abstract idea. *Id.* If so, we "consider the elements of each claim both individually and

'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)).

At *Alice* step one, the Board held the claims are directed to the abstract idea of "[a]djusting the amount a person saves and choosing investments for the saved amounts, with the goal of saving enough for retirement." *Decision*, 2018 WL 4360561, at \*4. We agree. Representative claim 1 recites receiving investment data, adjusting an individual's savings, and investing the adjusted savings to achieve a projected retirement income. This describes no more than the automation of the longstanding fundamental economic concept of personal financial planning. We have routinely held that such claims are directed to abstract ideas. *See, e.g.*, *Alice*, 573 U.S. at 221 (claiming automated intermediated settlement); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (claiming automated offer-based price optimization); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1054–55 (Fed. Cir. 2017) (claiming an automated loan application process). We conclude the claims are directed to an abstract idea under *Alice* step one.

The claims fare no better under *Alice* step two. The elements of the claims, considered individually and as an ordered combination, fail to recite an inventive concept. Instead, the claims merely recite an abstract idea with instructions to implement it "using one or more computers with associated software." And as the Board correctly stated, these are "generic, purely conventional elements." *Decision*, 2018 WL 4360561, at \*5. In fact, the '768 application states that the claimed computers "can be implemented as general-purpose computers" and describes the claimed software as "instructions that when executed by a processing device causes the processor to perform specified operations." '768 application at 9–11.

Mr. Greenstein argues that the limitation "utiliz[ing] a projected amount of income at a future date for at least one person" provides the requisite inventive concept. He contends this limitation was the basis for the successful commercial launch of a new product, demonstrating its material advantages to persons in the relevant market. Mr. Greenstein's contentions are unavailing.

Even if Mr. Greenstein is correct that the claimed utilization of a projected future income was the basis for a commercially successful product, this is insufficient to transform the claims into a patent-eligible application. It is well-settled that a claimed invention's "use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a *new* abstract idea is still an abstract idea.").

Thus, we conclude the Board did not err in holding that the claims of the '768 application are ineligible under § 101. Because we conclude that the Board did not err in holding all of the claims ineligible, we need not review its anticipation and obviousness rulings.

## CONCLUSION

We have considered Mr. Greenstein's remaining arguments but find them unpersuasive. For the foregoing reasons, we conclude that the claims are ineligible under § 101 and therefore *affirm* the decision of the Board.

## AFFIRMED

### COSTS

No costs.